Cellino Law LLP
By: John E. Lavelle, Esq.
PA Bar I.D.: 315154
600 Old Country Road, Suite 412
Garden City, New York 11530
Phone: (800) 555-5555 x2502
Fax: (212) 228-2020
John.Lavelle@CellinoLaw.com                   Attorneys for Plaintiff

## IN THE COURT OF COMMON PLEAS OF
## TIOGA COUNTY, PENNSYLVANIA

JEAN TABER, as Administrator of the Estate  :
of Dennis Ray Gee, Jr., Deceased          :
400 Cumming Road                 :    Docket No: 675-CV-2020
Tioga, PA 16946                   :
                                 :
          Plaintiff          :
    vs.                        :
                                 :    Not an Arbitration Case
                                 :
TOYOTA MOTOR SALES, U.S.A., INC.    :
19001 S. Western Avenue           :
Torrance, CA 90501              :    Plaintiff Requests a Jury of 12
                                 :
IDEAL MOTORS                  :
3131 Lake Road                :
Horseheads, NY 14845         :
                                 :
STATE LINE AUTO AUCTION      :
830 Talmadge Hill Road S         :
Waverly, NY 14892             :
                                 :
ELM CHEVROLET COMPANY, INC.    :
301 E. Church Street            :
Elmira, NY 14901              :
                                 :
          Defendants      :

## AMENDED COMPLAINT IN A CIVIL ACTION

AND NOW comes plaintiff, JEAN TABER, as Administrator of the Estate of

Dennis Ray Gee, Jr., Deceased, by her counsel John E. Lavelle, Esq. of Cellino Law



EXHIBIT

B

LLP, 600 Old Country Road, Suite 412, Garden City, New York 11530, and files this amended complaint against defendants, TOYOTA MOTOR SALES, U.S.A., INC., IDEAL MOTORS, STATE LINE AUTO AUCTION and ELM CHEVROLET COMPANY, INC., and upon information and belief alleges as follows:

1.      Plaintiff JEAN TABER is an adult residing at the above-captioned address in Tioga County, Pennsylvania.

2.      Dennis Ray Gee, Jr. died in a crash on October 6, 2019.

3.      JEAN TABER was duly appointed as Administrator of the Estate of Dennis Ray Gee, Jr. on August 14, 2020.

4.      Defendant TOYOTA MOTOR SALES, U.S.A., INC. is a corporation with a business address of 19001 S. Western Avenue, Torrance, CA  90501.

5.      Defendant TOYOTA MOTOR SALES, U.S.A., INC. is duly authorized to conduct business in the Commonwealth of Pennsylvania.

6.      Defendant TOYOTA MOTOR SALES, U.S.A., INC. sells products in the Commonwealth of Pennsylvania.

7.      Defendant TOYOTA MOTOR SALES, U.S.A., INC. solicits business in the of Pennsylvania.

8.      Defendant TOYOTA MOTOR SALES, U.S.A., INC.'S products are sold in the Commonwealth of Pennsylvania.

9.      Defendant TOYOTA MOTOR SALES, U.S.A., INC.'S products travel through the stream of commerce into the Commonwealth of Pennsylvania.

10.     Defendant TOYOTA MOTOR SALES, U.S.A., INC.'S vehicles are sold in the Commonwealth of Pennsylvania.

11.   Defendant TOYOTA MOTOR SALES, U.S.A., INC.'S vehicles travel into the Commonwealth of Pennsylvania.

12.   Defendant TOYOTA MOTOR SALES, U.S.A., INC. committed a tortious act within the Commonwealth of Pennsylvania.

13.   Defendant TOYOTA MOTOR SALES, U.S.A., INC. committed a tortious outside of the Commonwealth of Pennsylvania which affected individuals within the Commonwealth of Pennsylvania.

14.   Defendant TOYOTA MOTOR SALES, U.S.A., INC. is subject to jurisdiction in the Commonwealth of Pennsylvania.

15.   Defendant IDEAL MOTORS is a corporation with a business address of 3131 Lake Road, Horseheads, NY  14845.

16.   Defendant IDEAL MOTORS is duly authorized to conduct business in the Commonwealth of Pennsylvania.

17.   Defendant IDEAL MOTORS sells products in the Commonwealth of Pennsylvania.

18.   Defendant IDEAL MOTORS solicits business in the Commonwealth of Pennsylvania.

19.   Defendant IDEAL MOTORS committed a tortious act within the Commonwealth of Pennsylvania.

20.   Defendant IDEAL MOTORS committed a tortious outside of the Commonwealth of Pennsylvania which affected individuals within the Commonwealth of Pennsylvania.

21.    Defendant IDEAL MOTORS is subject to jurisdiction in the Commonwealth of Pennsylvania.

22.    Defendant IDEAL MOTORS' products are sold in the Commonwealth of Pennsylvania.

23.    Defendant IDEAL MOTORS' products travel through the stream of commerce into the Commonwealth of Pennsylvania.

24.    Defendant IDEAL MOTORS' vehicles are sold in the Commonwealth of Pennsylvania.

25.    Defendant IDEAL MOTORS' vehicles travel into the Commonwealth of Pennsylvania.

26.    Defendant STATE LINE AUTO AUCTION is a corporation with a business address of 830 Talmadge Hill Road S, Waverly, NY  14892.

27.    Defendant STATE LINE AUTO AUCTION is duly authorized to conduct business in the Commonwealth of Pennsylvania.

28.    Defendant STATE LINE AUTO AUCTION sells products in the Commonwealth of Pennsylvania.

29.    Defendant STATE LINE AUTO AUCTION solicits business in the Commonwealth of Pennsylvania.

30.    Defendant STATE LINE AUTO AUCTION committed a tortious act within the Commonwealth of Pennsylvania.

31.    Defendant STATE LINE AUTO AUCTION committed a tortious outside of the Commonwealth of Pennsylvania which affected individuals within the Commonwealth of Pennsylvania.

32      Defendant STATE LINE AUTO AUCTION is subject to jurisdiction in the Commonwealth of Pennsylvania.

33.     Defendant STATE LINE AUTO AUCTION'S products are sold in the Commonwealth of Pennsylvania.

34.     Defendant STATE LINE AUTO AUCTION'S products travel through the stream of commerce into the Commonwealth of Pennsylvania.

35.     Defendant STATE LINE AUTO AUCTION'S vehicles are sold in the Commonwealth of Pennsylvania.

36.     Defendant STATE LINE AUTO AUCTION'S vehicles travel into the Commonwealth of Pennsylvania.

37.     Defendant ELM CHEVROLET COMPANY, INC. is a corporation with a business address of 301 E. Church Street, Elmira, NY 14901.

38.     Defendant ELM CHEVROLET COMPANY, INC. is duly authorized to conduct business in the Commonwealth of Pennsylvania.

39.     Defendant ELM CHEVROLET COMPANY, INC. sells products in the Commonwealth of Pennsylvania.

40.     Defendant ELM CHEVROLET COMPANY, INC. solicits business in the Commonwealth of Pennsylvania.

41.     Defendant ELM CHEVROLET COMPANY, INC. committed a tortious act within the Commonwealth of Pennsylvania.

42.     Defendant ELM CHEVROLET COMPANY, INC. committed a tortious outside of the Commonwealth of Pennsylvania which affected individuals within the Commonwealth of Pennsylvania.

43.     Defendant ELM CHEVROLET COMPANY, INC. is subject to jurisdiction in the Commonwealth of Pennsylvania.

44.     Defendant ELM CHEVROLET COMPANY, INC.'S products are sold in the Commonwealth of Pennsylvania.

45.     Defendant ELM CHEVROLET COMPANY, INC.'S products travel through the stream of commerce into the Commonwealth of Pennsylvania.

46.     Defendant ELM CHEVROLET COMPANY, INC.'S vehicles are sold in the Commonwealth of Pennsylvania.

47.     Defendant ELM CHEVROLET COMPANY, INC.'S vehicles travel into the Commonwealth of Pennsylvania.

48.     The incident described herein took place on October 6, 2019 at approximately 5:33 a.m. on Route 328 in Jackson Township, Tioga County, Pennsylvania.

49.     At the time of the incident, Dennis Ray Gee, Jr. was the owner of a 2005 Toyota Scion TC bearing Pennsylvania License Plate Number KLK8493.

50.     Said 2005 Toyota Scion TC bore Vehicle Identification Number JTKDE167350031112.

51.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. designed the vehicle.

52.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. manufactured the vehicle.

53.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. fabricated the vehicle.

54.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. assembled the vehicle.

55.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. tested the vehicle.

56.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. owned the vehicle.

57.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. sold the vehicle.

58.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. distributed the vehicle.

59.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. was the wholesaler of the vehicle.

60.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. was the retailer of the vehicle.

61.     On or before the date of the crash, Defendant TOYOTA MOTOR SALES, U.S.A., INC. provided a warranty for the vehicle.

62.     On or before the date of the crash, Defendant IDEAL MOTORS designed the vehicle.

63.     On or before the date of the crash, Defendant IDEAL MOTORS manufactured the vehicle.

64.     On or before the date of the crash, Defendant IDEAL MOTORS fabricated the vehicle.

65.    On or before the date of the crash, Defendant IDEAL MOTORS assembled the vehicle.

66.    On or before the date of the crash, Defendant IDEAL MOTORS tested the vehicle.

67.    On or before the date of the crash, Defendant IDEAL MOTORS sold the vehicle.

68.    On or before the date of the crash, Defendant IDEAL MOTORS distributed the vehicle.

69.    On or before the date of the crash, Defendant IDEAL MOTORS was the wholesaler of the vehicle.

70.    On or before the date of the crash, Defendant IDEAL MOTORS was the retailer of the vehicle.

71.    On or before the date of the crash, Defendant IDEAL MOTORS repaired the vehicle.

72.    On or before the date of the crash, Defendant IDEAL MOTORS refurbished the vehicle.

73.    On or before the date of the crash, Defendant IDEAL MOTORS possessed the vehicle.

74.    On or before the date of the crash, Defendant IDEAL MOTORS controlled the vehicle.

75.    On or before the date of the crash, Defendant IDEAL MOTORS auctioned the vehicle.

76.     On or before the date of the crash, Defendant IDEAL MOTORS had title to the vehicle.

77.     On or before the date of the crash, Defendant IDEAL MOTORS owned to the vehicle.

78.     On or before the date of the crash, Defendant IDEAL MOTORS registered the vehicle.

79.     On or before the date of the crash, Defendant IDEAL MOTORS leased the vehicle.

80.     On or before the date of the crash, Defendant IDEAL MOTORS rented the vehicle.

81.     On or before the date of the crash, Defendant IDEAL MOTORS provided a warranty for the vehicle.

82.     On or before the date of the crash, Defendant STATE LINE AUTO AUCTION designed the vehicle.

83.     On or before the date of the crash, Defendant STATE LINE AUTO AUCTION manufactured the vehicle.

84.     On or before the date of the crash, Defendant STATE LINE AUTO AUCTION fabricated the vehicle.

85.     On or before the date of the crash, Defendant STATE LINE AUTO AUCTION assembled the vehicle.

86.     On or before the date of the crash, Defendant STATE LINE AUTO AUCTION tested the vehicle.

87.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION sold the vehicle.

88.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION distributed the vehicle.

89.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION was the wholesaler of the vehicle.

90.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION was the retailer of the vehicle.

91.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION repaired the vehicle.

92.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION refurbished the vehicle.

93.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION possessed the vehicle.

94.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION controlled the vehicle.

95.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION auctioned the vehicle.

96.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION had title to the vehicle.

97.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION owned to the vehicle.

98.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION registered the vehicle.

99.    On or before the date of the crash, Defendant STATE LINE AUTO AUCTION leased the vehicle.

100.   On or before the date of the crash, Defendant STATE LINE AUTO AUCTION rented the vehicle.

101.   On or before the date of the crash, Defendant STATE LINE AUTO AUCTION provided a warranty for the vehicle.

102.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. designed the vehicle.

103.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. manufactured the vehicle.

104.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. fabricated the vehicle.

105.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. assembled the vehicle.

106.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. tested the vehicle.

107.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. sold the vehicle.

108.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. distributed the vehicle.

109.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. was the wholesaler of the vehicle.

110.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. was the retailer of the vehicle.

111.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. repaired the vehicle.

112.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. refurbished the vehicle.

113.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. possessed the vehicle.

114.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. controlled the vehicle.

115.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. auctioned the vehicle.

116.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. had title to the vehicle.

117.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. owned to the vehicle.

118.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. registered the vehicle.

119.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. leased the vehicle.

120.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. rented the vehicle.

121.   On or before the date of the crash, Defendant ELM CHEVROLET COMPANY, INC. provided a warranty for the vehicle.

122.   At the time and place herein described, Dennis Ray Gee, Jr. was operating the vehicle Toyota Scion TC described above.

123.   At the time and place hereinabove described, while Dennis Ray Gee, Jr. operated the vehicle, said vehicle was caused to leave the roadway and roll.

124.   The driver's side door opened during the crash thereby exposing Dennis Ray G, Jr. to extreme danger and hazards which caused devastating injuries to Dennis Ray Gee, Jr. and resulted in his death.

125.   Dennis Ray Gee, Jr.'s death was caused by the opening of the vehicle's driver side door during the course of the crash.

126.   The failure of the latch/locking mechanism on said door was the cause of Dennis Ray Gee, Jr.'s death.

127.   Plaintiff JEAN TABER is asserting claims for both wrongful death and conscious pain and suffering.

128.   As a result of the negligence and carelessness of defendants as described herein, Dennis Ray Gee, Jr. suffered devastating personal injuries which resulted in his death.

129.   Prior to his death, decedent Dennis Ray Gee, Jr. experienced great pain, suffering and anguish, and claim is made therefore.

130.   Prior to his death, decedent Dennis Ray Gee, Jr. experienced great

mental pain, suffering and anguish as he anticipated his impending death.

131.    Prior to his death, decedent Dennis Ray Gee, Jr. suffered emotional distress, and claim is therefore made.

132.    Prior to his death, decedent Dennis Ray Gee, Jr. suffered fear and terror, and claim is therefore made.

## COUNT I
## NEGLIGENCE AGAINST TOYOTA MOTOR SALES, U.S.A., INC.

133.    Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

134.    Dennis Ray Gee, Jr.'s injuries and death were caused by defendant's negligence, gross negligence, lack of ordinary care in manufacturing, distributing and selling said vehicle.

135.    Defendant was negligent and/or grossly negligent in the design, manufacturing and testing of said vehicle, failing to give adequate warnings regard the use of said vehicle, and negligent in manufacturing said vehicle

136.    As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count I in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT II
## BREACH OF WARRANTY AGAINST
## TOYOTA MOTOR SALES, U.S.A., INC.

137.    Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

138.    Defendant expressly and impliedly warranted that the aforementioned vehicle was warranted and fit for the purpose for which it was intended.

139.    Plaintiff relied on defendant's express and implied warranties that the vehicle was safe for use as intended.

140.    The aforementioned vehicle was not merchantable, safe or fit for its intended use.

141.    As a proximate result of defendant's breach of express and implied warranties, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER demands judgment in Count II in excess of the arbitration limits of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT III
## STRICT PRODUCTS LIABILITY AGAINST
## TOYOTA MOTOR SALES, U.S.A., INC.

142.    Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

143.    Defendant designed, manufactured, distributed and sold the vehicle described herein in a defective condition and created an unreasonable risk of harm to

the foreseeable consumers, including plaintiff, when defendant placed said vehicle into the stream of commerce.

144.   Defendant was aware that the aforementioned vehicle was defective in its design, testing and manufacturing and failed to warn or failed to give adequate warnings of the defect to consumers, including plaintiff.

145.   Plaintiff in no way misused the vehicle designed, manufactured, distributed and sold by defendant.

146.   The aforementioned vehicle was defective in that said vehicle was improperly designed and/or manufactured and Defendant failed to provide adequate warning regarding the safe use of the vehicle.

147.   Defendant was in a superior position to discover any design defects before making the aforementioned vehicle available to consumers, including plaintiff, and the product as designed presented an unreasonable risk of harm to consumers, including the plaintiff.

148.   Defendant had a duty to plaintiff to market a safe vehicle, including the aforementioned vehicle, and defendant breached that duty when it marketed said vehicle which was designed in a manner that was not reasonably safe and the defective design of said vehicle was a substantial factor in causing plaintiff's injuries and death.

149.   Defendant's vehicle was not reasonably safely designed because there was substantial likelihood of harm and it was feasible to design the vehicle in a safer manner.

150.   As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count III in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT IV
## NEGLIGENCE AGAINST IDEAL MOTORS

151.    Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

152.    Dennis Ray Gee, Jr.'s injuries and death were caused by defendant's negligence, gross negligence, lack of ordinary care in manufacturing, distributing and selling said vehicle.

153.    Defendant was negligent and/or grossly negligent in the design, manufacturing and testing of said vehicle, failing to give adequate warnings regard the use of said vehicle, and negligent in manufacturing said vehicle

154.    As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count IV in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT V
## BREACH OF WARRANTY AGAINST
## IDEAL MOTORS

155.    Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

156.   Defendant expressly and impliedly warranted that the aforementioned vehicle was warranted and fit for the purpose for which it was intended.

157.   Plaintiff relied on defendant's express and implied warranties that the vehicle was safe for use as intended.

158.   The aforementioned vehicle was not merchantable, safe or fit for its intended use.

159.   As a proximate result of defendant's breach of express and implied warranties, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER demands judgment in Count V in excess of the arbitration limits of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT VI
## STRICT PRODUCTS LIABILITY AGAINST
## IDEAL MOTORS

160.   Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

161.   Defendant designed, manufactured, distributed and sold the vehicle described herein in a defective condition and created an unreasonable risk of harm to the foreseeable consumers, including plaintiff, when defendant placed said vehicle into the stream of commerce.

162.   Defendant was aware that the aforementioned vehicle was defective in its design, testing and manufacturing and failed to warn or failed to give adequate warnings of the defect to consumers, including plaintiff.

163.   Plaintiff in no way misused the vehicle designed, manufactured, distributed and sold by defendant.

164.   The aforementioned vehicle was defective in that said vehicle was improperly designed and/or manufactured and Defendant failed to provide adequate warning regarding the safe use of the vehicle.

165.   Defendant was in a superior position to discover any design defects before making the aforementioned vehicle available to consumers, including plaintiff, and the product as designed presented an unreasonable risk of harm to consumers, including the plaintiff.

166.   Defendant had a duty to plaintiff to market a safe vehicle, including the aforementioned vehicle, and defendant breached that duty when it marketed said vehicle which was designed in a manner that was not reasonably safe and the defective design of said vehicle was a substantial factor in causing plaintiff's injuries and death.

167.   Defendant's vehicle was not reasonably safely designed because there was substantial likelihood of harm and it was feasible to design the vehicle in a safer manner.

168.   As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count VI in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

**COUNT VII**
**NEGLIGENCE AGAINST STATE LINE AUTO AUCTION**

169.   Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

170.   Dennis Ray Gee, Jr.'s injuries and death were caused by defendant's negligence, gross negligence, lack of ordinary care in manufacturing, distributing and selling said vehicle.

171.   Defendant was negligent and/or grossly negligent in the design, manufacturing and testing of said vehicle, failing to give adequate warnings regard the use of said vehicle, and negligent in manufacturing said vehicle

172.   As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count VII in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

**COUNT VIII**
**BREACH OF WARRANTY AGAINST**
**STATE LINE AUTO AUCTION**

173.   Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

174.   Defendant expressly and impliedly warranted that the aforementioned vehicle was warranted and fit for the purpose for which it was intended.

175. Plaintiff relied on defendant's express and implied warranties that the vehicle was safe for use as intended.

176. The aforementioned vehicle was not merchantable, safe or fit for its intended use.

177. As a proximate result of defendant's breach of express and implied warranties, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER demands judgment in Count VIII in excess of the arbitration limits of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT IX
## STRICT PRODUCTS LIABILITY AGAINST
## STATE LINE AUTO AUCTION

178. Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

179. Defendant designed, manufactured, distributed and sold the vehicle described herein in a defective condition and created an unreasonable risk of harm to the foreseeable consumers, including plaintiff, when defendant placed said vehicle into the stream of commerce.

180. Defendant was aware that the aforementioned vehicle was defective in its design, testing and manufacturing and failed to warn or failed to give adequate warnings of the defect to consumers, including plaintiff.

181. Plaintiff in no way misused the vehicle designed, manufactured, distributed and sold by defendant.

182.   The aforementioned vehicle was defective in that said vehicle was improperly designed and/or manufactured and Defendant failed to provide adequate warning regarding the safe use of the vehicle.

183.   Defendant was in a superior position to discover any design defects before making the aforementioned vehicle available to consumers, including plaintiff, and the product as designed presented an unreasonable risk of harm to consumers, including the plaintiff.

184.   Defendant had a duty to plaintiff to market a safe vehicle, including the aforementioned vehicle, and defendant breached that duty when it marketed said vehicle which was designed in a manner that was not reasonably safe and the defective design of said vehicle was a substantial factor in causing plaintiff's injuries and death.

185.   Defendant's vehicle was not reasonably safely designed because there was substantial likelihood of harm and it was feasible to design the vehicle in a safer manner.

186.   As a result of the negligence and carelessness of defendant as aforesaid, plaintiff     was     caused     to     suffer     catastrophic     injuries     and     death.

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count IX in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT X
### NEGLIGENCE AGAINST ELM CHEVROLET COMPANY, INC

187. Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

188. Dennis Ray Gee, Jr.'s injuries and death were caused by defendant's negligence, gross negligence, lack of ordinary care in manufacturing, distributing and selling said vehicle.

189. Defendant was negligent and/or grossly negligent in the design, manufacturing and testing of said vehicle, failing to give adequate warnings regard the use of said vehicle, and negligent in manufacturing said vehicle

190. As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count X in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT XI
## BREACH OF WARRANTY AGAINST
## ELM CHEVROLET COMPANY, INC.

191.   Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

192.   Defendant expressly and impliedly warranted that the aforementioned vehicle was warranted and fit for the purpose for which it was intended.

193.   Plaintiff relied on defendant's express and implied warranties that the vehicle was safe for use as intended.

194.   The aforementioned vehicle was not merchantable, safe or fit for its intended use.

195.   As a proximate result of defendant's breach of express and implied warranties, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER demands judgment in Count XI in excess of the arbitration limits of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

## COUNT XII
## STRICT PRODUCTS LIABILITY AGAINST
## ELM CHEVROLET COMPANY, INC.

196.   Plaintiff repeats all prior allegations set forth in her Complaint as if set forth here at length.

197.   Defendant designed, manufactured, distributed and sold the vehicle described herein in a defective condition and created an unreasonable risk of harm to

the foreseeable consumers, including plaintiff, when defendant placed said vehicle into the stream of commerce.

198.   Defendant was aware that the aforementioned vehicle was defective in its design, testing and manufacturing and failed to warn or failed to give adequate warnings of the defect to consumers, including plaintiff.

199.   Plaintiff in no way misused the vehicle designed, manufactured, distributed and sold by defendant.

200.   The aforementioned vehicle was defective in that said vehicle was improperly designed and/or manufactured and Defendant failed to provide adequate warning regarding the safe use of the vehicle.

201.   Defendant was in a superior position to discover any design defects before making the aforementioned vehicle available to consumers, including plaintiff, and the product as designed presented an unreasonable risk of harm to consumers, including the plaintiff.

202.   Defendant had a duty to plaintiff to market a safe vehicle, including the aforementioned vehicle, and defendant breached that duty when it marketed said vehicle which was designed in a manner that was not reasonably safe and the defective design of said vehicle was a substantial factor in causing plaintiff's injuries and death.

203.   Defendant's vehicle was not reasonably safely designed because there was substantial likelihood of harm and it was feasible to design the vehicle in a safer manner.

204.   As a result of the negligence and carelessness of defendant as aforesaid, plaintiff was caused to suffer catastrophic injuries and death.

**WHEREFORE**, Plaintiff JEAN TABER, demands judgment in Count XII in excess of the arbitration limit of fifty thousand dollars ($50,000.00) plus interest and costs of suit and delay damages as may be recoverable under the Pennsylvania Rules of Civil Procedure.

John E. Lavelle, Esq.
PA Bar I.D. 315154
Cellino Law LLP
600 Old Country Road, Suite 412
Garden City, New York 11530
(800) 555-5555 x2502